The first case we're going to hear this morning is Goddard v. Burnett. And I guess Mr. Sasser, you're first. May it please the Court, I'm Travis Sasser. I represent Bobby Goddard. It was error to deny confirmation of Mr. Goddard's plan where he proposed to retain three vehicles and pay those claims through Chapter 13 trustee disbursements. You're going to have to speak up. We're right across the room here, but you're talking down on me. I apologize. Mr. Goddard was not in bad faith for merely doing what the Bankruptcy Code permitted him to do. These vehicle expenses are defined as reasonable and necessary under the Bankruptcy Code. There's a very high bar to finding bad faith. It requires a finding that there was an abuse of the provisions, purposes, or spirit of the Bankruptcy Code. Then how would you define the spirit of the Bankruptcy Code? I think it has to be defined based on the provisions of the Code. So I don't think this Court should attempt to divorce the spirit from the provisions or the purposes. It's all one and the same. Well, we defined the spirit in Deans, didn't we? Well, you did, but the idea at that time, of course, there was no 1325B. No, but that was the spirit. We defined the whole Bankruptcy Court. The idea was to be used positively with the intent to try to pay off everybody. Well, I don't remember the exact language. Actually, I think Deans explicitly said that you didn't have to pay back everybody. You don't have to pay back everybody. There's a spirit. You can't manipulate the Bankruptcy Court. I completely agree that manipulation or dishonesty would be a key factor in a good-faith analysis. We're not involved with dishonesty here. And I think that the issue, though, is if we're trying to figure out what the purposes or the spirit of it are, you look at the 2005 amendments to the Code, and these are defined as reasonably necessary expenses. There's a number of reasons for the 2005 amendments. One of them had to do with simply a mechanical formula where it was very efficient. How is what happened here within the spirit and purpose of the Bankruptcy Code? Well, because it complied with the provisions of the Code, which says that the debtor is allowed to try to keep their vehicle. And what about the manipulation part? This could not be viewed as manipulation when all the purchases were made within 33 months of filing bankruptcy, and he has three cars, he's one person, well, two people with three cars. Or does he have four? There was no finding of manipulation by the Bankruptcy Court. So if there was manipulation, it wasn't found that way. And, again, he was simply just doing what the Code allows him to do, which is to try to retain these vehicles. If the Congress had wanted to limit the vehicles, they certainly knew how to do it. And, in fact, the Code itself- Let me ask you something. If I understand your argument, you're basically urging us, based on the recent amendments to the Code, that 1325B is a mechanical application. And if you comply with that mechanical application, then it makes no sense to conclude it's a bad faith under 1325A. That's what I think your argument is, basically, isn't it? It is, but I also am conceiving the idea that you could try to manipulate that test. Well, that's what I'm getting to. I was going to give you some hypotheticals under 1325B where the bankrupt abused it. For instance, the bankrupt says, I'm going to acquire ten expensive oil paintings. And the way I'm going to acquire them, I can't afford them, but I can pay half. So what he does is he secures secured loans for half and unsecured loans for half. And then he says, I'll just go into bankruptcy, apply 1325B, get rid of the unsecured, and I'll have paid for the secured, and I'll have these paintings at half price. Now, that sounds to me like an abuse of 1325B. Right. I think it would be an abuse under 1325A3. Well, no, B. He followed B. He thought mechanically. I'm trying to get a hypothetical which demonstrates that B can be abused. I'm agreeing with you, actually. Oh, okay. I'm saying yes. 1325A3 would come into play anytime there's a dishonesty or a manipulation. This isn't dishonesty. Manipulation. Manipulation or abuse. He's following the letter of the law. He looked at 1325B carefully and followed every step. And so you get something where he says, since I followed it exactly as Congress specified, I'm protected. I get that shield. And the argument would be, well, you can even abuse B, and if you abuse B, you can then apply A. I do agree with that, Your Honor. I think that we can't have ‑‑the judge has to maintain discretion in these kind of examples that you're giving because otherwise the bankruptcy process will be abused. I'm simply just saying it doesn't apply in this case because this case was a situation where I can see the point that the vehicles were purchased within about 30 months or so, but there was no evidence or findings that this was somehow a manipulation or an attempt. And it's not just the vehicles. Nearly all the debt was accrued within the 33 months prior to filing bankruptcy. I don't necessarily know that that's in the record. There was certainly a point made about the idea that there was a competition a bit between the secured debt and the unsecured debt, and that would be one of my arguments about the 2005. I mean, it certainly looks like the argument could be made that there was a manipulation in that 33 months to carefully follow, as Judge Niemeyer says, the rule and calculate it up to how much can I purchase to equate to zero or nothing left in disposable income So I get the benefit of all of these cars and houses and fancy lawnmower without having to pay off the debt, which apparently he hasn't done at all for the last two years. Well, there was no finding of that, and a very able trustee who was investigating the whole situation, obviously examining both at the 341 meeting. What do you think it means when it wasn't done in good faith? Well, I think that there's some different, you know, I don't want to beat a dead horse about manipulation and dishonesty, but certainly if there's situations where there's, I think Judge Niemeyer's point is very well taken, any kind of attempt to game the means test I think is very problematic. But that's what, well, good, because I think so, too, and I think perhaps this may have been an attempt to game the means test. You said may have been, but there was no finding of that. Well, that's what both the bankruptcy judge and the district court found. No. They found 1325 bad faith, didn't they? They did, and I would refer the court to the trustee's objection to confirmation, which simply says there's three vehicles, and therefore confirmation should be denied. There was no allegations of any kind of manipulation or planning or anything of that nature, which I think would be problematic. You were asking about other problems like prior history of bankruptcy filings, an abusive way of interacting with non-bankruptcy litigation or perhaps even judgment collection. That has been in the past, and the district court pointed this out, that those can be examples of bad faith. So the bad faith requirement or the provision is still very much alive. However, on these facts where somebody just simply has secured debt that they're using, that they purchased, I would point out that my client is a disabled veteran, and he's been through a lot, and he does enjoy that Corvette, and some people might say that's not necessary, but the Congress was very able to determine things that are luxuries, not necessary, and they chose not to do that. I don't understand how they chose not to do that. What do you mean? In the statute, it does not have any limitation on secured debt, and I would refer the court to the Blood Soapy Cook holding that came out of this court. No, but a court could conclude, you agreed with me, the court could conclude that the following 1325B can be manipulative and abusive. And the question is, in this case, I gave you the hypothetical of ten paintings where the guy intended to pay half for them and have the rest discharged. Here, we don't have that explicit, but we have that pretty much implied. He retained three expensive automobiles, and within a fairly short time, and even took unsecured debt shortly before he purchased, what, the Genesis? Right, the Genesis was the newest of the vehicles. Yeah, the newest, right. And I would just point out, the part of the code is trying to do is they don't really want to, they don't want to both require debtors to surrender their secured debt. This has to do with the fact that secured creditors are a big part of bankruptcy. There's no requirement aspect. There's a question here of good faith, and the question of good faith is whether you follow the spirit. And the quote I was looking for is this. It says, Congress never intended that Chapter 13 serve as a haven for debtors who wish to receive a discharge of unsecured debts without making an honest effort to pay these debts, and to pay those debts. And it seems to me the bankruptcy court clearly intends to give a new start, but they also intend that the debtor be totally candid, fair, and make some effort. Here he's designing a plan to take care of his debtors, creditors, and the district court found the plan to be in bad faith because it was manipulative. He's trying to retain these three expensive automobiles, vehicles. Well, with respect, he didn't say, the district court judge did not say manipulative. They say lack of good faith, right? But oddly enough, none of the examples the district court gave actually matched to the facts of this case. It was just basically a general assessment. So I think that I see that I'm over time, but I would ask that the court give careful consideration to the blood subpoena because, I mean, it really does almost answer this question completely, especially when you look at the fact that it relies so heavily on the Drummond v. Welsh holding out of the Ninth Circuit. Can I ask you just one question? I know we are over time, but we received a stipulation from the parties that the debtor here is eight months or seven months or eight months behind on his mortgage. Does that play any role? I don't think so at all. We did that just to be, you know, above. Well, it clearly was not considered, but the question is if the bankruptcy court receives that information, does that affect whether the plan will be approved? The only thing I would say is if this court overrules the bankruptcy court, it is true that we will have to do a plan modification, which is a very common and customary thing that I'm sure that we'll be able to do. So your position is it really is just informational for us? Informational only. Okay, thank you. All right, Mr. Cook. Good morning, judges of the Fourth Circuit. May it please the court, my name is Richard Cook, and I represent AMICI Curay, the National Association of Consumer Bankruptcy Attorneys, and the National Consumer Bankruptcy Rights Center. We are here in support of the appellant. Affirming the lower courts in this case will create a direct conflict with the holding of the Ninth Circuit in Drummond v. Welsh. In that particular case, the debtor, the Chapter 13 debtor, proposed to retain and pay the mortgage against their home, the car loan against three separate vehicles, loans against two ATVs, a loan against their Airstream trailer. And in that case, in Drummond v. Welsh in the Ninth Circuit, the Ninth Circuit was clear that the consideration of these secure debt payments that the debtor retaining and maintaining these secure debt payments in accordance with the means test that was put in place in BAPSIPA, those secure debt payments in and of themselves cannot form the basis of bad faith. And so that's kind of what we have here with the lower court. The trustee's objection to confirmation was based on the debtor making these quote-unquote high car payments. You can see in the joint appendix. But the court in Welsh did also say that a debtor may act in bad faith if he has unfairly manipulated the bankruptcy code, correct? I think that is correct. And that's also where you can look at, you talk about manipulation, timing. Your example, Judge Niemeyer, of buying the paintings, you finance half, you put unsecured debts with the other half. In that situation, if that was done on the eve of filing, absolutely that can be bad faith. Well, okay, good. Here between December 2020 and November 2022, and it is all in the record, he purchased a $740,000 house. A month later, a Corvette for $46,000. After that, a truck for $62,000. After that, what do we have? A Genesis for $58,000. And then also accumulated $87,000 in unsecured debts, including some personal loans. That's just in a couple years. And then files bankruptcy. That sounds like manipulation on the eve of bankruptcy filing to me. I guess respectfully, I would say, Judge Thacker, 33 months, 30 months, we think that's actually quite a long period of time. I guess if it was in the record, which I don't think it is here, if the debtor had met with a bankruptcy attorney, say, around this point of time, 30 months, 33 months, and there was this type of planning to kind of collude to manipulate the code, I'd kind of give that to you. But it's kind of a two-and-a-half, three-year period of accumulating debt. I would say that that's not uncommon. It's a type of debt, too. Well, I mean, it's a Corvette, and justify the Corvette because it makes them feel good. I mean, we have a bunch of facts that were laid out, and while I understand your association's position to be that 1325B to some extent provides a safe haven if you follow that, it doesn't mean that that provision can't be abused. At least I think everybody would agree that it can be abused, and that 1325A is applicable throughout the code because that's the whole basis for the equity of the bankruptcy court. And I think this is a highly factual case, don't you think? I do, Your Honor, but I also think, you know, the fact, I think, I guess the straw that broke the camel's back here is the amount of what these secured payments are. And this court was clear in Bledsoe v. Cook, a panel that you were on, Judge Thacker, that said that, and I want to read, I kind of want to read verbatim here because I think this helps, that this is page 750 of Bledsoe v. Cook. It states, nothing in Clause 3, so Clause 3 is the part of the means test, 707B2. We call it Clause 3 in our brief. Nothing in Clause 3 suggests that there is any qualification or limitation on the kind of secured debt that is deducted from current monthly income. But Blessoe doesn't address the good faith requirement, the balancing, the good faith application. Correct. I mean, it basically all but went up to that line. Bledsoe v. Cook. And what's the question in this case? I mean, the question in this case is whether these secured debt payments on these three vehicles constitutes bad faith or is a lack of good faith. And that was, as Judge Berner points out, that was not the question in Bledsoe. Well, Bledsoe wholesale. And as you point out, I was on that case, so I recall that was not the question in Bledsoe. Correct. And I argue that one as well. The Bledsoe v. Cook wholesale adopted the reasoning of Drummond v. Welsh from the Ninth Circuit. And so basically it did all but say good faith. But I think you're over-reading Welsh. I think Welsh was much narrower. I don't think Welsh suggests that compliance with 1325B provides a shield from any good faith analysis. And that's what the argument is being made here tends to be, that if you comply with literal terms of 1325B, you can never be found to violate 1325A. And my suggestion in the hypothetical I gave to your colleague here was an abuse of 1325B, and he agreed that it could be abused. If that's so, then we get to the factual question in this case, whether these circumstances reveal an abuse and justify the factual finding by the bankruptcy court and the district court. Well, it seems the abuse that has occurred here is kind of the decision between the debtor-to-pay secured creditors versus not paying unsecured creditors. So basically the lower- Well, it's a combination of things. It's a question of the nature of the vehicles. It's the fact that it's three vehicles. It's the timing of the vehicles. It's the fact that these unsecured creditors are going to get a morsel out of this while he's going to end up with the ownership of these three vehicles, which he financed in part with these unsecured loans. I mean, it goes on, and the bankruptcy courts and the district court laid all this out. The question I think legitimately can be raised is, is 1325B a shield that if you comply with it mechanically, above median income type of situation, are you protected from bad faith? And we already have the concession, I think a necessary concession. That provision can be abused. And if it's abused, then we're in the good faith area. No, I agree on that point. But I think what will happen here, we don't think this is an egregious case. I think this could lead to unintended consequences in that, one, you're going to have, because it's in the joint appendix that the payment, the car payments being above the median number that is set by the IRS on the means test. Because these payments were over a certain threshold, it drew the objection from the trustee. And so median means it's in the middle, so conceivably half of these payments could be over that threshold. But the unintended consequence would be you're going to have expensive confirmation hearings that are going to be very fact intensive. These are debtors that are already of limited means. But more importantly, we think it's going to disrupt secured credit markets because the logical conclusion here would be you have to surrender one of the vehicles. You come into bankruptcy, and basically the bankruptcy judge is telling the debtor you have to let- You don't have to do anything specific. I mean, you keep suggesting that the code, a ruling that there is abuse, compels certain conduct. The burden is on the debtor to come in with a plan, a plan that satisfies 1325B, and that is in good faith. And it follows the spirit of the Bankruptcy Code, which we articulated at some length in Deans. And I think everybody shares what the spirit of the Bankruptcy Code is. In this case, based on the circumstances that Judge Thacker just laid out some of the scenario, the timeline on that, but the bankruptcy court was fully aware of that and recited it, and so did the district court. And so we have a question as to whether that amounts to bad faith. And that, to me, is a legitimate argument, whether that's bad faith. But I must say the indicators aren't really very good. This doesn't look like a man who's trying to get protection and make a good effort to pay his debtors. It looks to me like he's seeking a shield. But I may be wrong on that. But I think the position of your association would be, I guess, is to have maximum protection from 1330. If you comply with 1325B, to have maximum protection from that. Your position, I understand, should be, or is, you cannot be in bad faith when you follow what Congress said. Correct, Your Honor. I could not have said it any better, Judge. But Congress left in the good faith provision. It could have, at the same time, repealed the good faith provision, but yet the good faith provision remains. And we're here under an abuse of discretion standard. And so it's your burden to show that the district court and the bankruptcy court abused its discretion. Perhaps there could have been a different, could have gone a different way. But we need to review this factual finding for an abuse of discretion. Well, we would respectfully state that if the lower courts misinterpret the law in making its determination, that would be a de novo review at this court. Which, again, if you were to follow Drummond v. Welsh, where you exclude the calculation, the deductions for secure debts. Now, we're just talking about excluding the deductions. Now, again, when you talk about the circumstances for when you incurred the obligation, potentially the type of obligation, I think that would fall within it. But even Drummond v. Welsh pointed out that it somewhat cabins the inclusion of the means test in these mechanical deductions, does somewhat cabin the good faith discussion. However, just like in Deans it's pointed out, you definitely look to was the debtor honest in its bankruptcy schedules? Has there been any fraud upon the court? You look at the prior bankruptcy filings of the debtor. Has there been a manipulation with those? Is there an attempt to defeat state court litigation? And then you look at other egregious circumstances. And so Drummond v. Welsh talks about that, that, yes, it's slightly cabined. And I think that would also apply equally to this court's holding in Deans. All right. I think we've covered this. We're over time here. We respectfully request that the lower courts be vacated and this be sent back to the bankruptcy court. Thank you. All right. Mr. Burnett. May it please the court. My name is Michael Burnett. I'm the Chapter 13 trustee for the Riley Division of the Eastern District of North Carolina. I'm the named appellee in this matter and the trustee for Mr. Goddard's bankruptcy case. The question before the court this morning is whether the bankruptcy court misapplied 1325A3 good faith or committed clear error in applying that standard when it denied confirmation of the debtor's Chapter 13 plan. And I'm asking the court to find that there was. The court did neither of those for two principal reasons. The first is that despite the debtor's completion of the means test under 1325B, the bankruptcy court still has the ability to consider the impact of that means test under a 1325A good faith analysis. And the second reason is even if this court accepts the appellant's argument that 1325A3's good faith can have no relation to the means test in 1325B, nothing in the record of this case requires this court to reverse the bankruptcy court's denial of confirmation because the bankruptcy court provided a totality of circumstances analysis or factual findings which remains a valid approach under Deans v. O'Donnell and which is clearly not erroneous. Ultimately, under the facts of this case, considered with the plan as proposed, the debtor did not meet his burden of proof with respect to good faith. As to the first reason, the 2005 revisions of the bankruptcy code, the bankruptcy abuse provision, and with the court's permission, I'll just refer to that as BAPSEPA. With the BAPSEPA revisions, which were designed to address perceived abuse by debtors, it created a means test and for above-median income debtors, a highly formulaic and objective one, but it left the language of the original confirmation provisions of 1325A intact and even supplemented those requirements with another good faith requirement in 1325A7, that the petition be filed in good faith. So weight must be given to that choice by Congress that it left the 1325A3 good faith requirement in the language intact and proper weight must also be given to the fact that it created this means test for above-median income debtors. And so through that process, the effect of BAPSEPA, I think there's no question that the effect of BAPSEPA was to reduce court oversight in calculating disposable monthly income for above-median income debtors for the most part. Even with the strict statutory guidelines of the means test, the Supreme Court, for example, in Lanning, was invited to hold to that mechanical approach and it decided not to do that. It gave some leeway for calculating current monthly income. This court did it in Quigley, a case where a debtor was claiming expense deductions for secured debt he wasn't actually going to have. Well, in Bledsoe, we did say that, quote, of bankruptcy judges by removing the power to determine what is or is not reasonably necessary. I mean, the opposing counsel could argue and did argue that we're inching too far into determining whether or not, for example, that Corvette was reasonably necessary in what the district, in the district court's ruling here. And so I want to be very careful in responding to that, and it's a very good point. Good faith, I don't think good faith should be used to, as it has been used previously, in order to interject, for the court to interject itself into how the means test is calculated. It's very specific, and as opposing counsel pointed out, there are really no restrictions. When you're calculating the means test, a debtor can almost ad infinitum deduct whatever secured debt payments they may have. The argument I'm making here today is that, unlike previous cases where courts maybe found issues with the means test because Social Security income wasn't included or IRA distributions or something of that nature, what I'm saying here today is the means test should stand alone. It deserves a particular independency, but so does good faith. And so previously the court was asking questions about manipulation. I think that we've got to accept the means test as it is, and the role of good faith is then to view what the debtor did with the means test. Even if they follow the strict letter of the law, look what the result of the means test is, and then determine how it interacts with the case based on the facts of that case. That fully respects everything Congress did with the means test, and it fully respects what Congress left intact with the 1325A3 good faith. Well, if we adopt your construction of these two provisions, aren't we just running headlong into the Ninth Circuit opinion and creating a circuit split? Yes, Your Honor. The position that I'm arguing today is opposite of the Welsh, if you're referring to the Welsh opinion. That is correct. I'm not sure. Welsh is quite narrow, and I'm not sure it precludes a finding of manipulation of the means test. And that's my argument today is that either Welsh should not be adopted in that sense by this court, or to the extent that it can be interpreted that way, it should be rejected. I think Your Honor was very correct previously in interpreting Appellant's argument, and the argument is that as long as you satisfy the means test in accordance with the statute, then you by default satisfy the 1325A3. Well, I think that's the way they read Welsh. That's the way they read Welsh. And I don't think Welsh goes that far. I think Welsh addressed a much more specific circumstance and didn't preclude manipulation, abuse, and that type of thing. One of the reasons I made, reading the transcript of the confirmation hearing, one of the reasons I made such an issue of Welsh is because a number of other courts have interpreted it just as the appellants have, and I needed to draw out what is the proper interpretation in not only the bankruptcy court but in the circuit. How are we to take a case like Welsh and apply it? Because, as Your Honor pointed out, it would create, well, depending on how you interpret it, it could create a split. With regard to my first point, I think that both of these statutes can be respected fully in allowing A3, again, it's not an automatic means in order to challenge the means test, but the means test enjoys its independency, and the A3 good faith can come in based on the facts of a particular case. Otherwise ---- And one of those facts being unfair manipulation, which Welsh says and left in place and acknowledged that the good faith requirement remains the same. The district court below did compare the ---- So I think Welsh is actually in Appley's favor in that respect. So I will say the Welsh factors for bad faith, in my view, are slightly different than the Dean's versus O'Donnell factors. You're not pushing back on what Judge Thacker just said, did you? No, Your Honor. But if I understand Judge Thacker's point is that the Welsh ---- Is that I think Welsh helps you. That's what she just said, and you said no. Oh, I'm sorry. I'm sorry. I misunderstood. Well, I won't push back against that, and I'll accept that. The point I was going to make was the Welsh factors, the district court below found that the Welsh factors are in line with the Dean's versus O'Donnell. It depends how you read Welsh, and I think you need to read Welsh carefully because I think everybody seems to concede there are circumstances under which the means test could be applied manipulatively in bad faith and contrary to the spirit of the bankruptcy laws. And I think that's my argument here today, Your Honor, even though I will concede that the term manipulation has not previously been used up to this point. That is, in essence, what the bankruptcy court was implying below with its finding regarding good faith. And so with regard to the first point, which I think is a question of law, I think those two factors stand independent and can still be applied even post-BAPSEPA, and to the extent that contrasts with the Welsh finding, I think it's a proper contrast. With regard to my second reason why I'm asking this court to uphold the bankruptcy court below, even if this court were to find that 1325A3 can have no relation in analyzing the result of the means test, I think the bankruptcy court below provided a totality of the circumstances analysis. Through the debtor's testimony and the evidence and record, it determined certain facts which, even though they might be tangential to the means test, they were separate enough to find that the debtor. I think you couched that in a way that makes your burden much heavier. I don't think the argument is that 1325A cabins 1325B. I think 1325A relates to the entire plan. In other words, whatever the plan is, as you pointed out, 1325B stands on its own. And if you follow what it says, you're in compliance with it. That still doesn't make the plan in good faith, necessarily, if that means test, even though correctly followed, was manipulating the overall bankruptcy purpose. I agree, Your Honor. The completion of the means test does not answer the question of whether or not the plan should be confirmed. All right. And I think 25A 3 talks about basically is focusing on the whole plan, right? It is. That's right. There are nine different confirmation requirements set out in 1325A. Seven of them are arguably somewhat ministerial, but there are the two good faith requirements. A3 with respect to the filing of the plan and A7 with respect to filing of the petition. And in this particular case, I think that the record is clear that the bankruptcy court, unlike courts in very similar postures and fact patterns to some of these other opinions, the bankruptcy court was not attacking the means test. It was looking at what the debtor was doing, his financial circumstances. There was discussion about his employment, the nature and amount of unsecured claims, unusual and exceptional problems facing that particular debtor. These are some of the dean's, not exhaustive list, but some of the things that the dean's court mentioned. And the bankruptcy court went through the analysis and found, separate from any issues it may have subjectively with the means test, it found that the debtor did not meet their burden with respect to establishing good faith, and it ultimately the debtor's burden to do that. And so I think that's a factual finding, and it's one that requires a clear error review, and I just simply don't think that there's enough here in order to find that the – enough to remand or require or find that the bankruptcy court was improper in denying confirmation. Anything further? Yeah. I'm sorry, go ahead. Go ahead. I was merely going to conclude, Your Honor, and say that, just to recap, this court need not take anything away from what Congress did under BAPSEPA with respect to devising a means test for above median income debtors, and we fully respect that and the good faith requirement as it has historically been applied in this district. I think Deans v. O'Dell has aged very well in the past 40 years and is still fully applicable here today. And even after additional consideration, the court thinks that that is not correct. Even the Welsh court found that a totality of the circumstances analysis, separate from the means test, is still something that a court can use in order to deny confirmation. I believe that's what the bankruptcy court did here today – or, excuse me, below. And for those reasons, I would ask the court to affirm the district court and the bankruptcy court below. All right. Any questions, Your Honor? Thank you, Mr. Bryant. Mr. Sasser. Thank you. I do disagree with the idea that Welsh doesn't already address it or that Welsh is helpful to my opposing counsel. Welsh is extremely pertinent and helpful to our side because it very much anticipates the idea there will be secure debt payments that are absolutely allowed, even though perhaps not – again, they're defined as reasonably necessary expenses. So there was no disposable income requirement under wage order bankruptcy from 1938 until 1984. Until 1984, there was no requirement related to these matters. So the idea that Deans was issued in 1982 and somehow set forth – and Deans is anticipating – if you read Deans and you read the footnote, it's saying we're waiting for Congress to do a fix. We looked at Deans that described – I mentioned it to describe the purpose and spirit of the bankruptcy laws, and there are many, many other statements throughout the literature talking about the new start, the good faith. You come to the court with hat in hand and you are getting a discharge, but you make your good faith effort to pay what debts you can, and that type of thing under a plan. So I don't think these generalized statements are necessarily eliminated with the recent amendments to the bankruptcy code. It's a good – you have to propose the plan in good faith and by no means forbidden by law. It doesn't say you have to make a good faith effort to repay your general unsecured claims. That's what the 2005 amendments were all about was secured creditors are treated very well under that law, and that's a policy choice that the Congress made. I would refer the court to the Supreme Court holding in ransom. It talks about the fact that it's a mechanical test. It's under-inclusive over and under, and that's the nature of a mechanical test is it doesn't always produce results that maybe everybody fully understands, but the secured creditors are a big part of this, and also the efficiency and the uniformity. I mean, essentially what we're talking about is going back to a time when basically judges all over the country were just doing whatever they wanted in terms of the disposable income test. That is why the law changed in 2005, one of the reasons that it changed, both to prefer secured creditors and also to take the judicial discretion away. And I think what's going on here is we're saying somehow that provision means nothing because we're going to rely on some general spirit or purpose. I mean, the law has lots of purposes. If you're right about that, why did they leave in 1325A? To address situations of manipulation and dishonesty. Okay, well, then you can see that B can be manipulated and can be the result of improper purposes. But that's not what was found here. Well, now that's another issue. What was found here was bad faith or lack of good faith under 1325A3. Because he had three vehicles, but not because he had engaged in any manipulation or dishonesty. The court didn't just say because he relied on three vehicles. That's what the objection was based on, and if you actually read what they say in the very end, that's the issue. There is basically what the court, I know we're just here at oral argument, but it seems like you want to take us back to 2004 where you could just basically, you know, the judges have total discretion about these matters, and the Congress very deliberately took that away. So I hope that the court will consider that. Okay. Thank you, Mr. Sasson. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Nicole G. Berner